Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8131 | **DATE** | 11/12/2004 |
| **CASE TITLE** | Elkhatib vs. Dunkin' Donuts et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' Motion for Summary Judgment is granted. See attached. The Clerk shall enter judgment pursuant to Rule 58. Status hearing set for 1/24/05 is stricken.

*Charles R. Norgle*

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 15 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | rbf | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALID ELKHATIB ) | |
| ) | |
| Plaintiff, ) | Case No.: 02 C 8131 |
| ) | |
| v. ) | Honorable Charles R. Norgle |
| ) | |
| DUNKIN' DONUTS, INC. a Delaware ) | |
| corporation and ALLIED DOMECQ ) | |
| ) | |
| Defendants. ) | |



DOCKETED
NOV 15 2004

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge.

Before the court is Defendants Dunkin' Donuts, Inc. and Allied Domecq's Motion for Summary Judgment. For the following reasons, Defendants Motion for Summary Judgment is granted.

## I. BACKGROUND[1]

### A. Facts

Plaintiff Walik Elkhatib ("Elkhatib"), a Palestinian-Arab, came to this country in 1971. He is now an American citizen. In 1979, he purchased his first Dunkin' Donuts franchise in Bellwood, Illinois. Elkhatib became a Dunkin' Donuts franchisee partly because, he claims, his Arab race forbids him from handling pork, and in 1979, Defendants' stores did not carry pork products. In 1984, Defendants began offering breakfast sandwiches with bacon, ham, or sausage

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.



at its franchises. Elkhatib refused to sell these items at his store, and Defendants' District Manager Jeff Zevoral ("Zevoral") raised no objections. In 1995, Elkhatib opened his second franchise in Berkeley, Illinois, and once again refused to sell pork products. Defendants did not object. A year later, Elkhatib began selling breakfast sandwiches without meat at his Bellwood and Berkeley locations. Zevoral provided Elkhatib with a sign that said "No Meat Products Available." In 1998, Elkhatib opened his third franchise in Westchester, Illinois.[2] Then, in 2002, Elkhatib was approached by Gene Liguoritis ("Liguoritis"), Development Manager for Dunkin' Donuts. Liguoritis suggested that Elkhatib relocate the Westchester store from 1901 South Mannheim Road to a location at the intersection of Mannheim and Roosevelt Roads, in Westchester.

However, in May, 2002, Liguoritis informed Elkhatib that Defendants would not agree to the proposed relocation of the franchise. Dunkin' Donuts supervisors Greg Novak ("Novak") and Chuck Cowgill ("Cowgill") then held a meeting with Elkhatib at the Westchester store. At that meeting, Elkhatib informed Novak and Cowgill that he could not sell meat breakfast sandwiches because he was forbidden to handle pork. Then, on August 14, 2002, Elkhatib received a letter from Kathryn Thomas ("Thomas"), Legal Counsel for DOMEQ, which stated that Elkhatib was no longer eligible for relocation, or renewal of his current franchise agreements, because of his failure to carry Dunkin' Donuts' full breakfast sandwich product line. Compl., Ex. 3.

---

[2]In his complaint, Plaintiff states that he has two locations, see Compl., ¶ 7; while in his LR 56.1 statement, Plaintiff claims to have three locations. See Pl.'s LR 56.1 Stmt. of Undisputed Facts, ¶ 6, 8, 9.

2

## B. Procedural Framework

On November 8, 2002, Elkhatib filed a complaint against Defendants Dunkin' Donuts and Allied Domecq alleging civil rights violations. In response, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 13, 2003. That Motion was denied on March 27, 2003. Then, on July 1, 2004, Defendants filed a Motion for Summary Judgment. Defendants' Motion for Summary Judgment is now fully briefed and before the court.

## II. Discussion

## A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss

3

(America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

**B. Elkhatib's Claim under 42 U.S.C. §§ 1981 and 1982**

*1. 42 U.S.C. §§ 1981 and 1982*

Title 42, U.S.C. § 1981 provides in part:

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, as is enjoyed by white citizens . . . .
> (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.
> 42 U.S.C. § 1981 (a),(c).

Title 42, U.S.C. § 1982 provides: "Property rights of citizens. All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

It is well settled that §§ 1981 and 1982 are not applicable to claims of religious discrimination. See Runyon v. McCrary, 427 U.S. 160, 167 (1976) (§ 1981 "is in no way

4

addressed to [religious] categories . . . .") (overruled on other grounds by Patterson v. McLean Credit Union, 491 U.S. 164 (1989)); see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413 (1968) ("[§1982] deals only with racial discrimination and does not address itself to discrimination on grounds of religion or national origin"). Section 1981 typically deals with claims of employment discrimination. Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996) ("litigation involving § 1981 most commonly involves the right to make and enforce contracts of employment"); see also Waters v. Wis. Steel Works of Int'l Harvester Co., 427 F.2d 476, 482 (7th Cir. 1970) (§ 1981, which provides that all persons within United States shall have the same right to make and enforce contracts, was designed to prohibit private job discrimination) (citing Jones, 392 U.S. at 442, fn. 78). §1982 deals with property transactions, and was enacted to enforce the Thirteenth Amendment's prohibition of involuntary servitude. Morris, F.3d at 413 (citing Jones, 392 U.S. at 437).

## *2. Elkhatib's Allegations of Discrimination under §§ 1981 and 1982*

Elkhatib alleges discrimination based on race. See Compl., ¶ 9 ("Plaintiff, as an Arab is forbidden from dealing, buying or selling pork products, because of his race's traditions and religious practices"). Elkhatib cites St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) for the proposition that Arabs may sue for racial discrimination under § 1981. In that case, plaintiff Al-Khazraji sued a university that denied him tenure on the alleged grounds of racial discrimination. The Supreme Court held that "[i]f Respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or religion, he will have made out a case under § 1981." Id. at 613. Al-Khazraji based his claim solely on racial grounds. However, the court

5

construes Elkhatib's claim to be one of religious discrimination rather than racial discrimination. The dietary restrictions Elkhatib points to are associated with religion rather than race. Islamic and Jewish law both prohibit the handling and consumption of pork. See Koran 2: 172-74 ("[h]e has forbidden you carrion, blood, the flesh of the pig . . . ."); see also Leviticus 11:7 ("[a]nd the swine . . . is unclean to you").³ Claims of religious discrimination are not cognizable under § 1981 and § 1982. See Runyon, 427 U.S. at 167; Jones, 392 U.S. at 413.

Even if Elkhatib had alleged racial discrimination on the part of Dunkin' Donuts and Allied Domecq, Elkhatib still could not survive Defendants' Motion for Summary Judgment. To succeed in a §§ 1981 or 1982 claim, the plaintiff must show that : (1) he is a member of a racial minority; (2) the defendants had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. Morris, 89 F.3d at 413. To prove their claim, plaintiffs must present either direct of discrimination, or proceed under the indirect burden-shifting method explained in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-3 (1973). Direct evidence of discriminatory intent is evidence that shows the employer's intent without the need to rely on "inference or presumption." Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997). Direct evidence is evidence that "speaks[s] directly to the issue of discriminatory intent, [and] also relate[s] to the specific employment decision in question." Oates v. Discovery Zone, 116 F.3d 1161, 1170 (7th Cir. 1997). To prove a claim under §§ 1981 or 1982 using the direct evidence model, the plaintiff must show that the

---

³Moreover, all Arabs are not Muslims. Seventy-five to eighty percent of the approximately 3.5 million Arab-Americans are Christians. See http://www.njsb.com/njsbf/student/respect/winter02-2.cfm.

"employer's decision to take the adverse job action was motivated by an improper purpose, such as race or national origin." Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 938-9 (7th Cir. 2004). It is likely that the only real direct evidence of discriminatory intent is an admission by the employer. Logan v. Kautex Textron N. Am., 259 F.3d 635, 638 (7th Cir.2001).

If the plaintiff cannot produce any direct evidence, he must proceed under the McDonnell Douglas indirect burden-shifting method. Under this method, a plaintiff must first establish a prima facie case of discrimination by producing evidence from which a jury could find that: (1) the plaintiff belongs to a protected class; (2) he performed, or can perform, his obligations under the contracts; (3) he suffered an adverse action; and (4) similarly-situated non-protected individuals were treated more favorably. Hudson v. Chicago Housing Auth., 375 F.3d 552, 560 (7th Cir. 2004).

In this case, Elkhatib has not presented any direct evidence, such as a admission by Defendants, to show that Defendants intentionally discriminated against him. Elkhatib's only evidence is Defendants' refusal to relocate his store or renew his franchise agreement because he does not sell pork products, while other franchisees who do not sell pork have not had their agreements cancelled. On the contrary, Defendants have offered evidence to prove they acted without discriminatory intent. Thomas' letter to Elkhatib clearly shows that Defendants were not relocating his Westchester store and would not renew his existing agreements solely based on his refusal to sell the entire line of Dunkin' Donuts food products. Therefore Elkhatib must turn to the McDonnell Douglas indirect burden-shifting method.

Elkhatib has not made a prima facie case of discrimination. Elkhatib has shown that he

cannot perform his obligations under the current franchise agreement. The agreement, as entered into by Elkhatib and Defendants, requires all franchisees to carry the full food product line of Dunkin' Donuts. Elkhatib had made it clear to Cowgill and Novak that he will not carry any of the pork products as required by the agreement. Nor has Elkhatib shown that similarly-situated franchisees were treated more favorably than himself. Three other franchisees do not sell pork products because of external factors. The store in Skokie does sell pork, or any type of sandwich because of their lease agreement with the landlord. The store in Antioch does not sell sandwiches because of space restrictions, and the store on Devon is Kosher and does not sell pork products based on customer demographics. Because Elkhatib cannot perform his obligations under the franchisee agreements, or show that similarly situated people are treated more favorably, he has not made out a prima facie case under the burden-shifting method.

Even though Elkhatib has not established a prima facie case for discrimination, the court will proceed with an abundance of caution and assume that he has made out his case and continue with the burden shifting analysis. After the plaintiff has established his initial burden by showing some evidence that the defendant has intentional discriminated him, the defendant must respond with a legitimate, non-discriminatory reason for its actions. Alexander v. Wisc. Dept. of Health & Family Servs., 263 F.3d 673, 682 (7th Cir.2001). Finally, the burden shifts back to the plaintiff who must show that defendant's actions were merely pretextual. Walker v. Glickman, 241 F.3d 884, 889 (7th Cir. 2001). Here, Defendants have submitted a rational, non-discriminatory reason for their actions. As stated above, because Elkhatib failed to carry the full line of food products, Defendants would not extend his current franchise agreement, or relocate his Westchester store. Pl. Compl., Ex. 3. Elkhatib does not offer evidence to show that

8

Defendants actions were merely pretextual. He simply states that other franchisees do not sell pork products. Compl., ¶ 18.

In addition, this court will "not sit as a super-personnel department that reexamines an entity's business decisions" in cases where discrimination is alleged. Young In Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1262-3 (7th Cir. 1992) (citing Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986). Defendants are in a better position than the court to decide whether it is a sound business judgment to relocate Elkhatib's current Westchester location to the corner of Roosevelt and Mannheim Roads.

Finally, Elkhatib's claim that Defendants have waived their objection to his refusal to sell pork products is without merit. Elkhatib claims that because Defendants had not required him to sell pork products for twenty years, they have waived any right to require Elkhatib to sell their complete line of food products in future agreements. Defendants respond by stating that even though they may have not objected to Elkhatib's refusal to sell pork products, this does not constitute a waiver of the right to raise objections for future franchise agreements. Because Elkhatib cannot proceed under either §1981 or §1982 for the foregoing reasons, these arguments and claims are moot.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED. 11-12-04  Charles R. Norgle

ENTER: